UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| SPECTRALYTICS, INC., | Case No. 05-CV-1464 (PJS/LIB) |
| Plaintiff, | |
| v. | |
| | ORDER AFTER REMAND |
| CORDIS CORPORATION and NORMAN NOBLE, INC., | |
| Defendants. | |

---

    Alan G. Carlson, J. Derek Vandenburgh, Matthew J. Goggin, and Dennis C. Bremer, CARLSON CASPERS VANDENBURGH & LINDQUIST, P.C., for plaintiff Spectralytics, Inc.

    Gregory L. Diskant, Eugene M. Gelernter, and Jesse A. Devine, PATTERSON, BELKNAP, WEBB & TYLER LLP; Joseph W. Anthony and Courtland C. Merrill, ANTHONY OSTLUND BAER & LOUWAGIE, P.A., for defendant Cordis Corporation.

    James B. Niehaus and Christopher C. Koehler, FRANTZ WARD LLP; John Edward Connelly, FAEGRE & BENSON LLP, for defendant Norman Noble, Inc.

This matter was tried to a jury, which found that defendants Cordis Corporation ("Cordis") and Norman Noble, Inc. ("Noble")[1] willfully infringed United States Patent No. 5,852,277 (the '277 patent). The '277 patent is owned by plaintiff Spectralytics, Inc. and covers an apparatus for cutting a piece of metal tubing with a laser to make a stent. The jury awarded Spectralytics $22.35 million in compensatory damages for Cordis's infringement.

---

[1] The Court will generally refer to defendants collectively as "Cordis," unless there is a reason to refer to Noble separately. Cordis agreed to indemnify Noble for any liability incurred in this action.

After trial, Cordis moved for judgment as a matter of law or, in the alternative, a new trial. The Court denied the motion. *Spectralytics, Inc. v. Cordis Corp.* ("*Spectralytics I*"), 650 F. Supp. 2d 900, 923 (D. Minn. 2009).

Also after trial, Spectralytics moved for, among other things, enhanced damages for willfulness and attorney's fees. The Court denied both types of relief. *Id.*

All parties appealed. The Federal Circuit affirmed this Court in all respects save one: The Federal Circuit vacated the Court's ruling with respect to Spectralytics's motion for enhanced damages and attorney's fees. *Spectralytics, Inc. v. Cordis Corp.* ("*Spectralytics II*"), 649 F.3d 1336, 1339 (Fed. Cir. 2011). The Federal Circuit remanded the case to this Court for reconsideration of whether to award enhanced damages and attorney's fees.

Spectralytics's renewed motion for enhanced damages and attorney's fees is now before the Court. For the reasons that follow, the Court awards $500,000 in enhanced damages and declines to award attorney's fees.

## I.  ENHANCED DAMAGES FOR WILLFULNESS

In a patent case, 35 U.S.C. § 284 permits a district court to "increase the damages up to three times the amount found" by a jury. A court may not award enhanced damages against a defendant under § 284 unless a jury first finds that the defendant's infringement was willful. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc). But a finding of willful infringement "merely *authorizes*, but does not *mandate*, an award of increased damages." *Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990) (emphasis in original); *see also Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1378 (Fed. Cir. 2002) (quoting *Modine Mfg.*).

The decision of whether and how much to enhance damages for willful infringement is committed to the district court's discretion. *See Transclean*, 290 F.3d at 1377. In making this decision, the district court must consider the following nine factors identified in *Read Corp. v. Portec, Inc.*:

> (1) whether the infringer deliberately copied the ideas or design of another;
>
> (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed . . .
>
> (3) the infringer's behavior as a party to the litigation[;] . . .
>
> (4) [the d]efendant's size and financial condition[;] . . .
>
> (5) [the c]loseness of the case[;] . . .
>
> (6) [the d]uration of defendant's misconduct[;] . . .
>
> (7) [r]emedial action by the defendant[;] . . .
>
> (8) [d]efendant's motivation for harm[; and] . . .
>
> (9) [w]hether defendant attempted to conceal its misconduct.

970 F.2d 816, 827 (Fed. Cir. 1992).

After the trial in this case, when the Court first considered whether to award enhanced damages to Spectralytics, the Court considered all of the *Read* factors. *Spectralytics I*, 650 F. Supp. 2d at 922. But the Court discounted the second factor — the infringer's investigation into whether it was infringing a valid patent — in light of *Seagate*, a 2007 Federal Circuit opinion that significantly changed the law with respect to willfulness. *Spectralytics I*, 650 F. Supp. 2d at 922 ("With respect to defendants' investigation . . . the Court discounts this factor in light of *Seagate*'s abrogation of the duty of due care.").

On appeal in this case, the Federal Circuit held, in light of its intervening opinion in *i4i Limited Partnership v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010), that this Court had misapplied *Seagate*. *Spectralytics II*, 649 F.3d at 1348-49. Specifically, the Federal Circuit said that "*Seagate* did not change the application of the *Read* factors with respect to enhancement of damages" for willful infringement. *Id.* at 1349. Accordingly, the Court now considers in turn each of the *Read* factors, without discounting any of them.

### A. Factor 1: Copying

In its earlier order, the Court described the evidence of deliberate copying as "underwhelming." *Spectralytics I*, 650 F. Supp. 2d at 922. The Court further observed, in a footnote, that although the jury might conceivably have believed that Noble copied the patented design, the Court was "free to assess the evidence of copying on its own" because the jury was not asked an interrogatory about copying and because a finding of copying was not essential to any of the jury's decisions. *Id.* at 922 n.11.

In support of its renewed motion for enhanced damages, Spectralytics argues that on appeal, the Federal Circuit "believed copying had been sufficiently established." Pl. Mem. Supp. Renewed Mot. Enh. Damages & Att'y Fees at 3 [Docket No. 475]. But the Federal Circuit does not — and did not — weigh evidence in the first instance to decide how to apply the *Read* factors. The Federal Circuit simply held that, with respect to obviousness, "[t]here was substantial evidence whereby a reasonable jury could have found copying . . . and could have weighed [this] factor[] in favor of nonobviousness." *Spectralytics II*, 649 F.3d at 1344. This holding does not affect the ability of this Court — which heard all of the evidence at trial and

observed the demeanor of all of the witnesses — to decide whether evidence of copying weighs in favor of awarding enhanced damages.

The Court stands by its earlier finding with respect to copying. Specifically, the Court finds that, although it is possible that Noble copied the patented design, the evidence at trial failed to show that Noble in fact did so. The Court therefore finds that the copying factor does not weigh in favor of awarding enhanced damages.

### B. Factor 2: Investigation of the Merits

In its earlier order, the Court found that Cordis "did not carefully investigate the '277 patent until trial . . . ." *Spectralytics I*, 650 F. Supp. 2d at 922. The Court stands by this factual finding.

Evidence at trial showed that Cordis and Noble were accused of potentially infringing the '277 patent in late July 2004, when Spectralytics's attorney sent a letter to Cordis asserting that Noble's stent-cutting machines might infringe the '277 patent (and might infringe a second patent to the same inventor, Gary Gustafson). Trial Ex. P-77. Cordis apparently did not respond to that letter. Only in October 2004, after Spectralytics's attorney sent a follow-up letter, did Cordis respond. In a relatively brief letter dated October 19, 2004, one of Cordis's in-house lawyers, Paul Coletti, asserted that Cordis "reviewed the Gustafson patents and obtained their file histories . . . ." Trial Ex. P-79 at 2. Coletti implied, but did not actually say, that Cordis did not infringe the asserted patents and that the patents were invalid, stating: "[G]iven the apparent lack of appropriate examination in front of the U.S. Patent Office, or the acknowledg[]ment of prior public use of certain commercially available devices, we have concerns about the actual scope of the Gustafson claims . . . ." *Id.*

This is the extent of the evidence about Cordis's pretrial investigation of the '277 patent. Whether Cordis obtained an outside opinion of counsel remains a mystery, because Cordis moved — successfully — to exclude any evidence about whether it sought such an opinion. *See* Mot. Exclude Evidence and Argument Regarding Opinion of Counsel [Docket No. 277]; Order on Pretrial Mots. ¶ 23 [Docket No. 289]. And evidence at trial showed that Noble relied entirely on Cordis to investigate Spectralytics's allegations of infringement. Trial Tr. at 1530-31.

Coletti's letter in response to Spectralytics's infringement allegations was both superficial and tardy. Because the record contains no other evidence to show that Cordis "investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed," the Court finds that this second *Read* factor weighs in favor of awarding enhanced damages.[2]

### C. Factor 3: Litigation Behavior

In its earlier order, the Court rejected Spectralytics's argument that Cordis's litigation conduct warranted awarding enhanced damages, saying: "This was a very hard-fought case with much at stake, and counsel on both sides behaved, at times, less than admirably. The Court will not reward the pot for the kettle's misbehavior." *Spectralytics I*, 650 F. Supp. 2d at 921.

Spectralytics's desire to reargue this point is baffling, given the Court's earlier criticism of the litigation conduct of *all* parties, including Spectralytics itself. *See* Pl. Mem. Supp. Renewed Mot. Enh. Damages & Att'y Fees at 7-8. Especially baffling is Spectralytics's renewed argument that the Court should penalize Cordis for its failure to produce certain "process

---

[2]The Court emphasizes that it is not drawing a negative inference from Cordis's decision to exclude evidence about whether it sought an outside opinion of counsel. Rather, the Court is simply assessing the evidence about Cordis's investigation of the '277 patent that was actually admitted at trial.

parameter checklists" until shortly before trial. *Id.* at 7. As the Court explained pointedly at the pretrial conference, although Cordis behaved badly in not providing the checklists during discovery, Spectralytics was fully aware that the checklists existed and negligently failed to move to compel their production. When Spectralytics's counsel attempted to explain his failure to pursue the checklists by saying that Cordis had provided only a blank checklist and Spectralytics did not know what the filled-out checklists would say, the Court responded:

> Why didn't you go find out? Why didn't you find — Mr. Carlson, I do fault you for that. You dropped the ball in discovery. . . . [Y]ou found out about this months before the deadline for bringing non-dispositive motions. You dropped the ball. Now you are mad about it. You have only got yourself to blame. . . . I think [Cordis's] objection was frivolous. [Magistrate] Judge Erickson would have ordered them to turn this over in a heartbeat, but you didn't ask him to. We don't use motions in limine to reargue discovery motions that you should have brought before the deadline.

Pretrial Conf. Tr. at 12 [Docket No. 407].

At another point during the pretrial conference, the Court criticized Spectralytics's counsel for having asserted — without any basis whatsoever — that Cordis or Noble intentionally destroyed evidence. The Court said:

> You cannot be throwing allegations around like that, unless you have the evidence to back that up. . . . [T]hat is not the kind of litigating that I will tolerate in this courtroom. I want you and your side to know that. I mean, *both sides' briefs* are incredibly uncivil, incredibly nasty. There is a great deal of misleading. There is a great deal of attacks on the other side. It doesn't impress the judge. It doesn't help you [i.e., Spectralytics], and it doesn't help you [i.e., defendants]. You folks [i.e., defendants] did it virtually as much as Spectralytics did.

*Id.* at 49 (emphasis added).

The Court has provided these specific examples of the Court's reactions to the parties' litigation behavior because the Court's earlier, more-general statements on the subject seem to have fallen on deaf ears. To be clear: Both sides behaved badly in this litigation, and Spectralytics's conduct was as bad as (if not worse than) the conduct of the defendants. The third *Read* factor — the infringer's litigation behavior — does not weigh in favor of enhanced damages.[3]

### D. Factor 4: The Defendant's Size and Financial Condition

The Court finds that Cordis is a very large corporation and can afford to pay substantial enhanced damages. The fourth *Read* factor thus weighs in favor of enhanced damages (though, as the Court noted in its earlier order, this factor cannot — by itself — justify such an award).

The Court also finds that Noble, although smaller than Cordis, can afford to pay substantial enhanced damages. But the Court rejects Spectralytics's suggestion that the Court should separately assess willfulness damages against Cordis and Noble. *See* Pl. Mem. Supp. Renewed Mot. Enh. Damages & Att'y Fees at 2. Cordis is, by far, Noble's biggest customer; indeed, Noble almost functions as an in-house stent maker for Cordis. Reflecting that fact, Cordis agreed to fully indemnify Noble for patent-infringement damages. Under the circumstances, the Court sees nothing particularly reprehensible about the fact that Noble did not launch an independent investigation into the '277 patent, but instead relied on Cordis — which

---

[3]*Cf. Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1195 (Fed. Cir. 2007) ("[T]he [district] court observed that the conduct of both parties' counsel 'fell far short of a model prosecution and defense of a patent action, and an assessment that they met the minimum expectations would be a generous one.' Under those circumstances, the court determined 'to leave the parties where it finds them,' a decision that falls well within the court's discretion."); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996) ("[T]he court may consider the litigation actions of both sides in connection with § 285.").

had far greater resources at its disposal and which would be responsible for paying any damages. The Court does not see any reason to separately assess enhanced damages against Noble.

### E. Factor 5: Closeness of the Case

In its earlier order, the Court said that "this was a close case, as evidenced in part by the fact that, had the Court been sitting as the fact finder, it likely would have found the '277 patent invalid for obviousness." *Spectralytics I*, 650 F. Supp. 2d 922. The Court stands by this finding.

To get around the Court's earlier finding that the case was close, Spectralytics suggests that the Court erred in making this finding because the Court wrongly considered the closeness of the infringement case, rather than considering only the closeness of the willfulness case. *See* Pl. Mem. Supp. Renewed Mot. Enh. Damages & Att'y Fees at 8-10. For three reasons, the Court rejects the argument.

To begin with, the distinction between the "infringement" case and the "willfulness" case is not nearly as clear-cut as Spectralytics seems to think. Whether a defendant's infringement was willful is — and has always been — partly a function of the strength of the patentee's infringement case. Before *Seagate*, to avoid a finding of willful infringement, a defendant was required to "exercise due care to determine whether or not he is infringing." *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983). If infringement is a close question, then an accused infringer who — attempting, pre-*Seagate*, to exercise due care — erroneously determines that he is not infringing is less culpable than an accused infringer who makes the same determination when infringement is *not* a close question. And after *Seagate*, willfulness turns on whether "the infringer acted despite an *objectively high likelihood* that its actions constituted infringement of a valid patent." 497 F.3d at 1371 (emphasis added). Thus,

after *Seagate*, if the infringement case is close, then the willful-infringement case will — necessarily — *also* be close.

Further, the Court rejects the premise of Spectralytics's argument — that is, the assertion that the fifth *Read* factor (the closeness of the case) relates only to the closeness of the willfulness case. Instead, this factor relates to both the infringement case and the willfulness case, as is clear from this passage from *Laitram Corp. v. NEC Corp.*, in which the Federal Circuit affirmed a district court's denial of enhanced damages for willfulness:

> The district court held that, despite the jury finding of willfulness, which it assumed to be proper, enhanced damages were inappropriate *because of the closeness of both the infringement and willfulness issues*. . . . [J]ury verdicts need neither be overturnable nor sustainable before a district court can properly find that the issues decided were close ones. The district court properly considered whether NEC had presented a good faith defense against willfulness and a substantial challenge to infringement. It found the issues close. We detect neither clear error in those findings nor an abuse of discretion in the consequential refusal to enhance damages.

115 F.3d 947, 955 (Fed. Cir. 1997) (citations omitted); *see also Juicy Whip, Inc. v. Orange Bang, Inc.,* 382 F.3d 1367, 1373 (Fed. Cir. 2004) ("[The infringer] emphasizes that the court considered the issues of *infringement, willfulness*, and damages to be close questions and that the trial judge was in the best position to weigh those factors. . . . We agree with [the infringer] that the district court did not abuse its discretion by denying [the patentee's] motion to award enhanced damages and attorney fees." (emphasis added)).

Finally, even if the Court were to consider only the closeness of the willfulness case, the Court would find that the willfulness case was indeed close. Even when a jury finds willfulness, the district court may still independently "determin[e] the egregiousness of a willful infringer's

-10-

conduct." *Electro Scientific Indus., Inc. v. Gen. Scanning Inc.*, 247 F.3d 1341, 1354 (Fed. Cir. 2001). In this case, Cordis's conduct was not particularly egregious. It is true that Cordis did not take Spectralytics's infringement allegations seriously until this lawsuit started — but the second *Read* factor (the carefulness of the defendant's investigation) already captures this fact. Once the lawsuit began, Cordis developed a strong obviousness defense — a defense that, as noted, would have prevailed if this case had been tried to the Court instead of a jury. Moreover, the issue of infringement was, in the Court's view, almost a coin flip. If this case were tried ten times before ten different juries, the Court suspects that Cordis would prevail in more than half of those actions. The Court therefore finds that, even though the jury determined that Cordis willfully infringed, the issue of willfulness was close.

In short, the closeness of the case — whether that means the closeness of the infringement case, the willfulness case, or both — weighs against an award of enhanced damages.

### F. Factor 6: Duration of Misconduct

In its earlier order, the Court found that the duration of Cordis's infringement was not excessive. *Spectralytics I*, 650 F. Supp. 2d at 922. The Court sees no reason to alter this finding, but the Court provides more detail about the reasoning behind it.

Evidence at trial showed that some Cordis employees knew of the '277 patent's existence as early as January 1999, when a consulting firm included the patent in a report prepared for Cordis's legal department. Trial Tr. at 1170. Some Cordis employees again learned of the '277 patent's existence in August 2000, when the patent was discovered in connection with the preparation by Cordis's legal department of a patent application. *Id.* at 1171. There was no

evidence at trial, however, that any Cordis employee who learned of the '277 patent in 1999 or 2000 was in a position to know that Noble's stent-cutting machine might infringe the '277 patent.

Accordingly, the Court finds that Cordis's willful infringement did not begin until late July 2004, after Spectralytics's attorney sent a letter to Cordis asserting that Noble's stent-cutting machines might infringe the '277 patent.[4]  Trial Ex. P-77.  Ordinary (i.e., non-willful) infringement began much earlier.  Based on the jury's damages award, it is apparent that the jury found that infringement began in 1999.[5]  Thus, Cordis infringed the '277 patent for roughly 10 years, and it willfully infringed the patent for about one of those years, from July 2004 until the beginning of this lawsuit in July 2005.

The overall infringement period was relatively long, but the period of willful infringement was relatively short.  The Court therefore finds that the sixth *Read* factor — duration of misconduct — does not weigh in favor of enhanced damages.

### G.  Factor 7: Remedial Action

Cordis took no remedial action after being accused of infringement, unless defending this action is considered a remedial action.  But given the closeness of the case, the Court does not fault Cordis for taking this approach.[6]  Further, Spectralytics does not dispute that Noble stopped

---

[4]Because the jury was not asked an interrogatory about the date willful infringement began, the Court is free to make its own finding on the issue in connection with the issue of enhanced damages.

[5]The jury awarded $22.35 million in damages and indicated that this was a 5% royalty.  Verdict Form at 2 [Docket No. 368].  The base for the royalty was thus $447 million, which equals the total dollar amount of stent sales from Noble to Cordis from 1999 through the time of trial.  *See* Trial Tr. at 1229.

[6]*Cf. Gustafson, Inc. v. Intersys. Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990)
(continued...)

using the infringing device in February 2009, shortly after trial but before the Court entered a permanent injunction and while the parties' post-trial motions were still pending. Overall, the Court finds that the seventh *Read* factor does not weigh in favor of enhanced damages.

### H. Factor 8: Motivation for Harm

The Court did not find after trial, and still does not find, that Cordis was motivated to harm Spectralytics. *Spectralytics I*, 650 F. Supp. 2d at 922. This factor does not weigh in favor of enhanced damages.

### I. Factor 9: Attempted Concealment

The Court did not find after trial, and still does not find, that Cordis attempted to conceal its infringement. *Id.* This factor does not weigh in favor of enhanced damages.

### J. Conclusion

Of the nine *Read* factors, seven are either neutral with respect to awarding enhanced damages or militate against awarding enhanced damages (factors 1, 3, 5, 6, 7, 8, and 9). Only two factors — the infringer's investigation into the infringement allegations (factor 2) and the infringer's size and financial condition (factor 4) — weigh in favor of awarding enhanced damages. On balance, the Court finds that Cordis should be penalized by an award of $500,000 in enhanced damages.

---

[6](...continued)
("Nor is there a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit. Exercising due care, a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer. That such a defense proves unsuccessful does not establish that infringement was willful." (citation omitted)).

Although this amount is small compared to both Cordis's revenues and the amount of compensatory damages, the Court finds that it adequately penalizes Cordis for its willful infringement. Further, the Court notes that the disparity between this award and the jury's compensatory-damages award reflects not just that the Court's enhanced-damages award is relatively small, but also that the compensatory-damages award was extremely generous.

## II. ATTORNEY'S FEES

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Deciding whether to award attorney's fees under § 285 is a two-step process: First, the court must decide if the case is exceptional; second, if the case is exceptional, the court must then decide whether to award attorney's fees. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998). With respect to the first step, a party seeking attorney's fees under § 285 must prove by clear and convincing evidence that the case is exceptional. *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1314 (Fed. Cir. 2010). But where a jury has found willful infringement, "the district court must normally explain why it decides that a case is not exceptional . . . and, if exceptional, why it decides not to award attorney fees." *Transclean*, 290 F.3d at 1379.

For the reasons given above in connection with the issue of enhanced damages, the Court finds that this case is not exceptional. In particular, the issues of infringement and willfulness were very close, and Spectralytics behaved as badly as Cordis in conducting this litigation. *Cf. id.* at 1379 (affirming district court's decision not to award attorney's fees under § 285 despite a jury's finding of willful infringement); *see also Spectralytics II*, 649 F.3d at 1349 ("We take note of the district court's remark that both sides did not exhibit immaculate trial behavior.").

For the same reasons, even if the Court found the case to be exceptional, it would exercise its discretion not to award attorney's fees. *See Electro Scientific,* 247 F.3d at 1353 ("Even after a finding that a case is exceptional, the district court may decline to award attorney fees.").

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the renewed post-trial motion of plaintiff Spectralytics, Inc. for enhanced damages and attorney's fees [Docket No. 474] is GRANTED in part and DENIED in part as follows:

1. Plaintiff Spectralytics, Inc. shall take enhanced damages in the amount of $500,000 for defendants' willful infringement of claim 1 of U.S. Patent No. 5,852,277.

2. Plaintiff Spectralytics, Inc. is awarded postjudgment interest on this amount from February 3, 2009, forward in accordance with 28 U.S.C. § 1961.

3. The motion is DENIED in all other respects.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  November 30, 2011                    s/Patrick J. Schiltz
                                             Patrick J. Schiltz
                                             United States District Judge